[No. 28887-1-III.   Division Three.   October 6, 2011.]

THE CITY OF WALLA WALLA, *Respondent*, v. $401,333.44, *Defendant in Rem*, ADRIAN IBARRA-RAYA, *Appellant*.

238

*C. Dale Slack* (of *Law Office of C. Dale Slack*) and *Janelle Carman* (of *Carman Law Office*), for appellant.

*Timothy J. Donaldson, City Attorney*, for respondent.

¶1 SIDDOWAY, J. — This appeal of a civil forfeiture proceeding is the third time that the defendant, $401,333.44 in cash discovered in a 2006 search by Walla Walla police officers, and Adrian Ibarra-Raya, who claims to be its owner, have been before us. In *State v. Ibarra-Raya*, 145 Wn. App. 516, 187 P.3d 301 (2008), we reversed Mr. Ibarra-Raya's controlled substances convictions. In *City of Walla Walla v. $401,333.44*, 150 Wn. App. 360, 208 P.3d 574 (2009), we reversed the trial court's order granting summary judgment forfeiting the cash to the city of Walla Walla (City). Following remand, the City prevailed at trial, resulting in this third appeal by Mr. Ibarra-Raya.[1]

¶2 We reject Mr. Ibarra-Raya's contentions that the trial court lacked subject matter jurisdiction and that the City should be judicially estopped to assert probable cause for commencing the forfeiture proceeding. We conclude that the findings and conclusions are insufficient for appellate review on the element of probable cause for statutory forfeiture. We need not remand for further findings on probable cause, however, because substantial untainted evidence supports the trial court's finding that Mr. Ibarra-Raya is not the rightful owner of the cash, which in turn supports its conclusion that he is not entitled to its return. We affirm.

## PROCEDURAL BACKGROUND

¶3 On July 14, 2006, a narcotics officer with the Walla Walla police department obtained a search warrant and

---

[1] Although Mr. Ibarra-Raya is the nominal appellant, the parties have notified us that he has assigned his interest in the funds to the state of Oregon, in connection with a plea bargain arising out of his prosecution for drug crimes charged in Milton-Freewater.

seized the $401,333.44 at issue from a residence at 1035 St. John Street, following the arrest of Mr. Ibarra-Raya at the home earlier in the morning. Mr. Ibarra-Raya had been arrested by officers responding to a noise complaint, who entered the home, saw the cash, and provided information relied upon for the search warrant.

¶4 Later in the day, the City initiated forfeiture proceedings against the money by issuing a notice of seizure and forfeiture. The notice was addressed to Mr. Ibarra-Raya at the 1035 St. John Street address and was personally served on him at the county jail. At about the same time, Mr. Ibarra-Raya was charged with possession of a controlled substance with intent to deliver (marijuana) and possession of a controlled substance (cocaine).

¶5 Mr. Ibarra-Raya requested a hearing in the forfeiture proceeding and removed it to superior court. He was convicted in November 2006 and appealed. Summary judgment of forfeiture was granted in favor of the City in May 2007. In *Ibarra-Raya*, we reversed his convictions because officers entered his home without a warrant or circumstances supporting the professed emergency exception to the warrant requirement and the evidence supporting his conviction should have been suppressed.

¶6 Having found the search unlawful in *Ibarra-Raya*, we held in *$401,333.44* that the finding operated as collateral estoppel in the City's forfeiture action, and the exclusionary rule, which applies in forfeiture proceedings, precluded use of the illegally obtained evidence. *$401,333.44*, 150 Wn. App. at 365. We held that the seized money could be used for the limited purpose of establishing its existence and the court's in rem jurisdiction over it. *Id.* at 366 (quoting *United States v. Six Hundred Thirty-Nine Thousand Five Hundred & Fifty-Eight Dollars ($639,558) in U.S. Currency*, 293 U.S. App. D.C. 384, 387 n.5, 955 F.2d 712 (1992)). We held that after otherwise excluding the illegally obtained evidence, the evidence remaining did not support summary judgment in the City's favor. *Id.* at 369.

¶7 Following remand, the court conducted a two-day bench trial and filed a letter opinion containing findings and its conclusions that the City had established its right to retain the $401,333.44 on both bases urged by the City: that the cash was subject to statutory forfeiture under RCW 69.50.505 and alternatively could be retained under CrR 2.3 because Mr. Ibarra-Raya was not its rightful owner. The City later presented more abbreviated findings and conclusions, which were entered by the court.

¶8 Mr. Ibarra-Raya argues on appeal that (1) the trial court lacked subject matter jurisdiction; (2) the trial court committed reversible error by refusing to apply judicial estoppel to bar the City's proof of probable cause; (3) the trial court erred by basing findings and conclusions on the amount of money seized; and (4) when considering only the evidence on which the trial court was entitled to rely, insufficient evidence exists to support the City's forfeiture claim. Br. of Appellant at 1-3.

## ANALYSIS

¶9 Before examining Mr. Ibarra-Raya's assignments of error, it will be helpful to review the bases on which the City sought forfeiture of the cash and the elements it was required to prove. " '[A] court may refuse to return seized property no longer needed for evidence only if (1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute.' " *$401,333.44*, 150 Wn. App. at 367 (alteration in original) (quoting *State v. Alaway*, 64 Wn. App. 796, 798, 828 P.2d 591, *review denied*, 119 Wn.2d 1016 (1992)). The City relied for its entitlement to the cash on the first and third bases.

¶10 *Forfeiture pursuant to statute.* Among matters that can be at issue in determining whether property is "subject to forfeiture" under RCW 69.50.505 are whether the property qualifies as a type of property that can be

seized (in this case, money or proceeds associated with controlled substances violations as described in RCW 69.50.505(1)(g)) and whether the property was seized for forfeiture in a lawful manner. RCW 69.50.505(2); *State v. Clark*, 68 Wn. App. 592, 607-08, 844 P.2d 1029 (1993), *aff'd*, 124 Wn.2d 90, 875 P.2d 613 (1994). Both were at issue in this case, although whether the property was seized in a lawful manner was the closer issue.

¶11 Property may be seized for forfeiture with process; the process required is a judicial writ. *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 78, 838 P.2d 111, 845 P.2d 1325 (1992). The writ can be issued ex parte but must be based upon affidavits demonstrating probable cause. *Id.* at 86-87; *Bruett v. 18328 11th Ave., N.E.*, 93 Wn. App. 290, 301-02, 968 P.2d 913 (1998). Probable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a person of ordinary caution in the belief that the property was used or intended to be used in violation of the controlled substances act, chapter 69.50 RCW. *Valerio v. Lacey Police Dep't*, 110 Wn. App. 163, 176-77, 39 P.3d 332 (2002). Among lawful manners in which property may be seized for forfeiture by law enforcement *without process* are if the seizure is incident to an arrest or a search warrant, RCW 69.50.505(2)(a), or if a law enforcement officer has probable cause to believe that the property was used or is intended to be used in violation of the controlled substances act, RCW 69.50.505(2)(d). In this case, the City could not rely on its seizure incident to the search warrant found invalid in *Ibarra-Raya*, so its position in the forfeiture trial was that the seizure was supported by its probable cause to believe that the property was used or was intended to be used in violation of the controlled substances act, chapter 69.50 RCW. Br. of Resp't at 21-28 (relying on RCW 69.50.505(2)(d)).

¶12 When the existence of probable cause supporting a seizure without process is disputed, the agency must prove that probable cause existed at the time of the seizure.

To prove *probable cause*, it may not rely on evidence obtained through discovery or postseizure investigation, even though it may rely on after-acquired evidence for other purposes. This is supported by the language of the statute, which provides, "Seizure of personal property without process may be made if ... [t]he ... law enforcement officer *has* probable cause to believe that the property was used or is intended to be used in violation of this chapter." RCW 69.50.505(2)(d) (emphasis added). The power to order forfeiture is purely statutory and will be denied absent compliance with proper forfeiture procedure. *Alaway*, 64 Wn. App. at 801; *Espinoza v. City of Everett*, 87 Wn. App. 857, 872, 943 P.2d 387 (1997), *review denied*, 134 Wn.2d 1016 (1998). Forfeitures are not favored; they should be enforced only when within both the letter and the spirit of the law. *Bruett*, 93 Wn. App. at 295.

¶13 Reading the statute to require proof of probable cause existing at the time of seizure comports with the weight of authority interpreting parallel federal law, relied upon by Mr. Ibarra-Raya. Washington courts frequently look to federal civil forfeiture law to interpret our own. *Guillen v. Contreras*, 169 Wn.2d 769, 238 P.3d 1168 (2010). Prior to the adoption of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (CAFRA), the trend of authority held that in proving probable cause for the institution of a forfeiture action, the government is limited to the evidence it had in its possession at the time it filed its forfeiture complaint. *See, e.g., United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1054 (1st Cir. 1997); *United States v. $734,578.82 in U.S. Currency*, 286 F.3d 641, 655 (3d Cir. 2002); *United States v. Ninety One Thousand Nine Hundred Sixty Dollars ($91,960.00)*, 897 F.2d 1457, 1462 (8th Cir. 1990); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1066 (9th Cir. 1994); *United States v. 1948 Martin Luther King Drive*, 91 F. Supp. 2d 1228, 1233-34 (C.D. Ill. 2000). *But see United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1268 (2d Cir. 1989) (stating

that after-acquired evidence can support probable cause); *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir. 1992) (following *Livonia*).[2]

██ ██ ¶14 *Contention that Mr. Ibarra-Raya is not the rightful owner.* In Washington, CrR 2.3(e) governs motions for the return of illegally seized property; it provides that a person aggrieved by an unlawful search and seizure may move the court for the return of property on the ground that the property was illegally seized and that the person is lawfully entitled to its possession. Property need not be returned if the defendant is not the rightful owner. The seizure of property from someone is prima facie evidence of that person's entitlement. *Espinoza*, 87 Wn. App. at 871 (quoting *State v. Marks*, 114 Wn.2d 724, 734, 790 P.2d 138 (1990)). The burden is on the City to prove a greater right of possession than that of a defendant. *Id.* (citing *State v. Card*, 48 Wn. App. 781, 790-91, 741 P.2d 65 (1987)). Among guidelines for determining a defendant's right to return of property are that the government agency has the initial burden of proof to show right to possession and, thereafter, the defendant must come forward with sufficient facts to convince the court of his right to possession. *Marks*, 114 Wn.2d at 735. Only if the agency can make a substantial showing that the property does not belong to the defendant is the defendant required to show the court sufficient facts of his right to possession. *Id.* at 736.

---

[2] CAFRA made changes never adopted in Washington whose import is still being debated in the federal courts; as a result, post-CAFRA cases are not helpful. Some authorities contend that in adopting CAFRA, Congress implicitly approved the line of cases requiring the government to demonstrate probable cause with evidence in its possession at the time it instituted forfeiture proceedings. *See, e.g.,* 1 David B. Smith, Prosecution and Defense of Forfeiture Cases § 11.03[6] (2010); *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1166-69 (9th Cir. 2008), *cert. denied*, 555 U.S. 1170 (2009). Others agree with the position taken by the United States Department of Justice that language added by CAFRA (not present in Washington's controlled substances act) supersedes and eliminates the probable cause requirement. *See, e.g., United States v. $85,688.00 in U.S. Currency*, 740 F. Supp. 2d 1284, 1286 (D. Utah 2010).

¶15 With this explanation of the City's two claims, we turn to Mr. Ibarra-Raya's assignments of error.

I

¶16 Mr. Ibarra-Raya first argues that the trial court lacked subject matter jurisdiction to hear the forfeiture action because "for a forfeiture action to proceed in accordance with the law, there must be subject matter jurisdiction over the thing that was seized." Br. of Appellant at 31. The determination of subject matter jurisdiction is a question of law reviewed de novo. *In re Marriage of Kastanas*, 78 Wn. App. 193, 197, 896 P.2d 726 (1995). Subject matter jurisdiction is the authority to hear and determine the class of action to which the case belongs. *Spokane Airports v. RMA, Inc.*, 149 Wn. App. 930, 943, 206 P.3d 364 (2009) (quoting *Bour v. Johnson*, 80 Wn. App. 643, 647, 910 P.2d 548 (1996)), *review denied*, 167 Wn.2d 1017 (2010).

¶17 RCW 2.08.010 grants original jurisdiction to the superior court in all cases in which the value of the property in controversy exceeds $300, codifying article IV, section 6 of the Washington Constitution. RCW 69.50.505 provides that a party claiming an interest in property seized by law enforcement has a right to be heard by the seizing agency or, as Mr. Ibarra-Raya did here, may remove the matter to a court of competent jurisdiction. In his petition to remove the forfeiture proceeding to superior court, Mr. Ibarra-Raya alleged, properly, that the superior court "has jurisdiction over this matter under RCW 69.50.505(5) and 2.08.010." Clerk's Papers (CP) at 4. By statute and under the state constitution, then, forfeiture proceedings are a class of action the superior court has the authority to hear.

¶18 Mr. Ibarra-Raya nonetheless argues that *Republic National Bank of Miami v. United States*, 506 U.S. 80, 113 S. Ct. 554, 121 L. Ed. 2d 474 (1992) compels a finding that

the trial court lacked subject matter jurisdiction. But *Republic National Bank* did not deal with subject matter jurisdiction, it dealt with in rem jurisdiction: a court's authority to exercise jurisdiction over property. In rem jurisdiction is "far more analogous" to personal jurisdiction than to subject matter jurisdiction. *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 256 (4th Cir. 2002).

¶19 In *Republic National Bank*, the federal government commenced a forfeiture proceeding against a residence that was sold during the proceeding by agreement of the parties, with the proceeds being held by the United States Marshal. After the district court entered judgment forfeiting the sales proceeds to the government, the United States Marshal transferred the proceeds to the United States Department of Treasury's assets forfeiture fund, giving rise to an argument that the res had been moved outside the in rem jurisdiction of the district and appellate courts. Analyzing the case in personal jurisdiction terms, the United States Supreme Court held that jurisdiction over the person survives a change in circumstances, and that "[n]othing in the nature of *in rem* jurisdiction suggests a reason to treat it differently." 506 U.S. at 88. The appellate court was therefore found to have continuing jurisdiction.

¶20 Mr. Ibarra-Raya relies on *Republic National Bank* for the following statement:

> "Certainly, it has long been understood that a valid seizure of the res is a prerequisite to the *initiation* of an in rem civil forfeiture proceeding."

Br. of Appellant at 32 (emphasis added) (italics omitted) (quoting *Republic Nat'l Bank*, 506 U.S. at 84). From this, Mr. Ibarra-Raya argues that the Walla Walla officers' invalid seizure of the $401,333.44 as evidence deprived the trial court of subject matter jurisdiction. But well-settled law establishes that one can validly have a res before the court for forfeiture purposes even where it was discovered and obtained in violation of the Fourth Amendment. *See, e.g.,*

*Strong v. United States*, 46 F.2d 257 (1st Cir.) (holding that forfeiture statutes do not need to condition forfeiture on a lawful seizure under a search warrant or otherwise and that the court has jurisdiction over the res as long as it is in the actual or constructive possession of the seizing agency or the court), *cert. granted*, 283 U.S. 815, *and dismissed*, 284 U.S. 691 (1931); *Lowery v. Nelson*, 43 Wn. App. 747, 750, 719 P.2d 594, *review denied*, 106 Wn.2d 1013 (1986).

¶21 The justification for the rule that seizure of the res is a prerequisite to the initiation of in rem forfeiture proceedings is that property must be seized to fix and preserve in rem jurisdiction. Until seizure, particularly of movable personal goods, " 'it is impossible to ascertain what is the competent forum.' " *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 57, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993) (quoting *The Brig Ann*, 13 U.S. (9 Cranch) 289, 291, 3 L. Ed. 734 (1815)). As further explained by the Court in *Good*:

> As *The Brig Ann* held, all that is necessary "[i]n order to institute and perfect proceedings *in rem*, [is] that the thing should be actually or constructively within the reach of the Court." And as we noted last Term, "[f]airly read, *The Brig Ann* simply restates the rule that the court must have actual or constructive control of the res when an *in rem* forfeiture suit is initiated."

*Id.* at 57-58 (citation omitted) (alterations in original) (quoting *The Brig Ann*, 13 U.S. at 291; *Republic Nat'l Bank*, 506 U.S. at 87).

¶22 Mr. Ibarra-Raya also bases his argument that probable cause is a threshold jurisdictional issue on the procedure followed in federal cases on which he relies, in which the federal government was required to prove probable cause to the court before the ultimate burden of proof was shifted to the claimant. But that allocation of the burden was statutory, and the proofs were bifurcated in modern practice to avoid exposing a jury to otherwise-inadmissible hearsay the government is entitled to offer in support of

probable cause. 1 DAVID B. SMITH, PROSECUTION AND DEFENSE OF FORFEITURE CASES § 11.03[3] (2010) (citing cases). Lack of probable cause for seizure goes to the merits of a forfeiture claim, not to a court's jurisdiction to hear the claim. *United States v. $97,667.00 in U.S. Currency*, 538 F. Supp. 2d 1246, 1250 (C.D. Cal. 2007).

¶23 Finally, Mr. Ibarra-Raya cites *Clark*, 68 Wn. App. 592, 844 P.2d 1029, as holding that the existence of a lawful basis for seizure—in this case, alleged probable cause—is a jurisdictional fact the City must establish in order to be entitled to proceed. Br. of Appellant at 30. But *Clark*, like *Republic National Bank*, addresses in rem jurisdiction over the property to be forfeited, which *Clark* concluded the court had, citing *Strong*, 46 F.2d 257. *Clark*, 68 Wn. App. at 607.

¶24 Probable cause, even where it is the basis for the seizure and must be proved if forfeiture is contested, is not a jurisdictional fact. Because the forfeiture proceeding against the $401,333.44 is a class of action the court had authority to hear, the property was located in Walla Walla County, and the City demonstrated its compliance with the notice and service requirements of the statute, the trial court had subject matter and in rem jurisdiction.

## II

¶25 Mr. Ibarra-Raya next assigns error to the trial court's permitting the City to present evidence that led officers to believe his home was a drug "drop" house, in support of probable cause to believe that cash found in his home was subject to forfeiture. In the prior criminal proceeding, the City relied on the emergency exception to the warrant requirement as authority for the officers' search of the home. Given the City's earlier reliance on the emergency exception, Mr. Ibarra-Raya argues that evidence that law enforcement suspected drug dealing at the home should have been foreclosed by judicial estoppel in the forfeiture trial. He claims to have requested that the City be estopped

in connection with his motion to dismiss the forfeiture action and his motions in limine. Br. of Appellant at 37-38.

¶26 Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008). Determining whether to apply judicial estoppel focuses on three factors: (1) whether a party's current position is inconsistent with an earlier position, (2) whether judicial acceptance of an inconsistent position in the later proceeding will create the perception that the party misled either the first or second court, and (3) whether the party asserting the inconsistent position will obtain an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* We review the trial court's decision whether to apply judicial estoppel for an abuse of discretion. *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006).

¶27 Preliminarily, it does not appear that a claim of judicial estoppel was ever squarely presented to the trial court. In arguing for dismissal, Mr. Ibarra-Raya contended that the City had taken inconsistent positions, but did not mention judicial estoppel or argue the existence of its several elements. We ordinarily will not review issues that are raised for the first time on appeal. RAP 2.5(a).

¶28 Even if the issue had been presented, the facts would not support it. The first factor—that a later position be clearly inconsistent with an earlier position—is not present. The City asserted that Mr. Ibarra-Raya's residence was a suspected drop house from the time it filed the initial affidavit in support of a search warrant. As to the second factor, we have held that it requires that the earlier inconsistent position was successful, *see CHD, Inc. v. Taggart*, 153 Wn. App. 94, 103-04, 220 P.3d 229 (2009), which is not the case here. We rejected the City's position that the officers' entry into Mr. Ibarra-Raya's home was a lawful community caretaking search in the criminal case. *Ibarra-*

*Raya*, 145 Wn. App. at 522-23. Finally, and with respect to the third factor, Mr. Ibarra-Raya has not demonstrated that permitting the City to offer evidence suggesting his home was a drop house provided it with an unfair advantage or imposed an unfair detriment on him. To the contrary; Mr. Ibarra-Raya was able to point to the City's earlier evidence in support of a community caretaking search (that officers were merely investigating noises coming from a vacant house) as somewhat undercutting its argument for probable cause in the forfeiture trial.

## III

¶29 Mr. Ibarra-Raya next argues that the trial court relied on the amount of money seized contrary to controlling law, including our decision in *$401,333.44*, 150 Wn. App. 360, and contrary to the court's own rulings in limine. He complains that the trial court's letter opinion is "littered" with references to the inadmissible evidence. Br. of Appellant at 16. Mr. Ibarra-Raya acknowledges that in a bench trial the trial court is presumed to ignore inadmissible evidence, but argues that he can overcome the presumption by showing either that the trial court's decision was not supported by sufficient admissible evidence or that it relied upon the inadmissible evidence to make decisions it would not otherwise have made. *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970).

¶30 The simple answer to Mr. Ibarra-Raya's argument would ordinarily be that no reference to the amount of funds was included in the formal findings and conclusions entered by the trial court. In lieu of the extensive findings set forth in its letter opinion, the court entered more limited findings and conclusions presented by the City, which did not mention or draw inferences from the amount of money seized. A finding or conclusion stated in either an oral or a memorandum decision has no binding effect unless it is incorporated in the formal findings or

conclusions. *Huzzy v. Culbert Constr. Co.*, 5 Wn. App. 581, 583, 489 P.2d 749 (1971). It is the formal findings that we ordinarily review for sufficient support in the record.

¶31 In this case, however, the formal findings are not sufficient to permit meaningful review. They include only these two conclusory substantive findings:

> [Finding] 1.9 The City of Walla Walla proved by a preponderance of direct and circumstantial evidence presented at the December 14-15, 2009 hearing that the money seized at 1035 St. John St. on July 14, 2006 was furnished or intended to be furnished by person(s) in exchange for controlled substances in violation of the Uniform Controlled Substances Act, or, was used or intended to be used to facilitate violation of the Uniform Controlled Substances Act.

> [Finding] 1.10 The City of Walla Walla proved by a preponderance of direct and circumstantial evidence presented at the December 14-15, 2009 hearing that claimant is neither the lawful owner of the money seized at 1035 St. John St. on July 14, 2006 nor entitled to its possession.

CP at 1586-87. All remaining findings recount the history of proceedings prior to the bench trial.

¶32 While the degree of particularity required in findings of fact depends on the circumstances of the particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions. *In re Det. of LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986) (citing *Groff v. Dep't of Labor & Indus.*, 65 Wn.2d 35, 40, 395 P.2d 633 (1964); *State v. Russell*, 68 Wn.2d 748, 415 P.2d 503 (1966)). The findings of fact should show an understanding of the conflicting contentions and evidence, and a resolution of the material issues of fact that penetrates beneath the generality of ultimate conclusions. *Groff*, 65 Wn.2d at 40. The formal findings in this case indicate nothing about the factual bases for the trial court's determination that the City met its burden. They leave it to us, in the event of appeal, to review the entire record and weigh the evidence ourselves.

¶33 Where findings are inadequate, we may look to the trial court's memorandum opinion to determine the basis for the trial court's resolution of the issue. *Backlund v. Univ. of Wash.*, 137 Wn.2d 651, 656 n.1, 975 P.2d 950 (1999) (collecting cases). We will look to the findings in the trial court's contemporaneous letter opinion to supplement its formal findings, rather than remand for the entry of more detailed formal findings more than a year following the trial.

¶34 We agree with Mr. Ibarra-Raya that one key finding in the trial court's letter opinion impermissibly depends on its consideration of the amount of cash seized. But the trial court's improper consideration of the amount is a basis for reversal only if that finding is necessary to its conclusions, an issue we consider next. To the extent that the trial court's memorandum opinion reveals findings that impermissibly rely on the excluded evidence, we will disregard them.

IV

¶35 Mr. Ibarra-Raya finally argues that the trial court relied on tainted evidence and that the untainted evidence was insufficient to support either of the City's claims. The trial court's letter opinion separately recaps the evidence it relied upon in concluding that the City met its burden of proving each of its two claims. The opinion first sets forth 27 matters proved by the City that support its claim that the $401,333.44 is subject to forfeiture. CP at 1566-68. The opinion then recaps matters proved by the City that support its claim that Mr. Ibarra-Raya is not the rightful owner of the cash. CP at 1568-69.

¶36 Where the trial court has weighed the evidence, appellate review is ordinarily limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether the findings in turn support the conclusions of law. *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 761, 150 P.3d 1147 (2007)

(citing *Brin v. Stutzman*, 89 Wn. App. 809, 824, 951 P.2d 291, *review denied*, 136 Wn.2d 1004 (1998)). In this case, however, we must disregard any tainted evidence including the existence of the cash, other than to support the court's jurisdiction. In addition, and because Mr. Ibarra-Raya disputed the existence of probable cause at the time of the City's seizure, we must disregard after-acquired evidence (even untainted after-acquired evidence) to determine whether the City had the required probable cause when it seized the cash—not because of the exclusionary rule but because the City bore the burden of proving its strict compliance with the forfeiture statute.

¶37 "Substantial evidence" is the "quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true." *Clayton v. Wilson*, 168 Wn.2d 57, 63, 227 P.3d 278 (2010). We view the evidence in the light most favorable to the prevailing party and defer to the trial court regarding witness credibility and conflicting testimony. *Tae T. Choi v. Sung*, 154 Wn. App. 303, 313, 225 P.3d 425, *review denied*, 169 Wn.2d 1009 (2010), *cert. denied*, 131 S. Ct. 925 (2011).

¶38 We examine the evidence in support of the two claims in turn.

¶39 *Forfeiture pursuant to statute.* Mr. Ibarra-Raya makes a threshold argument that our decision in *Ibarra-Raya* compels a conclusion that probable cause did not exist for seizure and forfeiture of the cash. But our holding in *Ibarra-Raya* examined the City's reliance on the emergency exception to the warrant requirement. We had no occasion to consider whether Walla Walla officers had probable cause to believe that cash found at the home was used or intended to be used in violation of chapter 69.50 RCW.

¶40 The trial court's 27 findings of fact relating to the City's statutory forfeiture claim are all supported by substantial evidence. None rely on tainted evidence. Collectively, they support the court's conclusion that the $401,333.44

"was used in or the product of illegal drug sales/trade/activity." CP at 1568.

¶41 The trial court entered no conclusion that the property was seized in a lawful manner, however. Instead, it dealt with Mr. Ibarra-Raya's evidence and argument that probable cause was lacking as addressing a jurisdictional matter, just as Mr. Ibarra-Raya framed the issue on appeal. As a jurisdictional matter, it rejected Mr. Ibarra-Raya's position summarily. It noted that subject matter jurisdiction was a matter of law and, in the court's view, one that we resolved in *$401,333.44* when, in remanding, we held that the court could consider the seized money " 'for the limited purpose of establishing its existence and the Court's in rem jurisdiction over it.' " CP at 1566 (quoting *$401,333.44*, 150 Wn. App. at 366).

¶42 Ordinarily, we would remand for further findings of fact addressing this improperly framed and therefore unresolved issue of probable cause, recognizing that the existence of probable cause was a clearly contested issue at the forfeiture trial, a focal point of Mr. Ibarra-Raya's evidence, cross-examination, and argument, and something on which the City bore the burden of proof. The City's appellate briefing concedes that it relies on probable cause as the basis for a valid seizure and addresses the evidence that it believes supports probable cause. Br. of Resp't at 21-28. All we are lacking, then, are findings and conclusions that address it. Only the first 12 of the court's findings in its letter opinion could be considered in support of the lawfulness of the seizure, because the remaining 15 rely on after-acquired evidence. It is not clear whether, had the court addressed probable cause as a substantive element of the forfeiture claim, it would have entered additional findings.

¶43 We need not remand for additional findings, however, because we can affirm the trial court's judgment on the basis of the City's second claim, to which we turn.

¶44 *Contention that Mr. Ibarra-Raya is not the rightful owner.* Mr. Ibarra-Raya argues that in deciding the

City's claim that he was not entitled to return of the cash under CrR 2.3(e) because he was not the rightful owner, the trial court impermissibly relied on the amount of the cash. He cites the following paragraph of the trial court's letter opinion:

> The City further presented evidence at trial that when [Mr. Ibarra-Raya] attempted to cross the Mexican/United States border on 6/10/06, at Calixto, California, [he] only had in his possession $90 in United States currency and $60 in Mexican pesos. [Mr. Ibarra-Raya] further stated at that time he was going to California to work in the grape fields. In mid June, 2006, [Mr. Ibarra-Raya] was denied admission to the United States and ordered to return to Mexico, without a job and with only $90 in American money on his person. On July 14, 2006, barely a month later, [Mr. Ibarra-Raya] is asking this Court to find credible his claim to $401,333.44 in cash, without further explanation as to its source.

CP at 1569. We agree with Mr. Ibarra-Raya; the court's conclusion, while inescapable, impermissibly relies on the amount of the cash seized.

¶45 The trial court made additional and sufficient findings, however. It found that Mr. Ibarra-Raya had denied ownership of the cash. Testimony supporting this finding included the testimony of Officer Saul Reyna, the Spanish-speaking officer assigned to serve Mr. Ibarra-Raya with the City's notice of seizure and forfeiture form. When asked whether Mr. Ibarra-Raya said anything about the notice when it was served on him, the officer testified:

> When I presented him the notice, I explained to him what it was. It was for a sum of money and he stated it was not his money, he had no idea what I was talking about.

Report of Proceedings at 85. Officer Steven Ruley, another Walla Walla police officer, testified that he was assigned the responsibility of maintaining the police department's records on drug forfeiture cases and identified a declaration that he testified was the only claim of ownership ever

received from Mr. Ibarra-Raya and a certified copy of Mr. Ibarra-Raya's statement on plea of guilty to making a false statement when he signed the ownership declaration. Both were admitted. Mr. Ibarra-Raya objected to admission of the latter, which was an *Alford*[3] plea, and argues that we should not credit it on appeal as evidence supporting the trial court's findings. The City offered the statement as an admission of a party opponent, however, for which purpose it is admissible. *State v. Price*, 126 Wn. App. 617, 635, 109 P.3d 27 (citing *Mendoza v. Rivera-Chavez*, 88 Wn. App. 261, 272, 945 P.2d 232 (1997), *aff'd*, 140 Wn.2d 659, 999 P.2d 29 (2000)), *review denied*, 155 Wn.2d 1018 (2005). On admitting it, the trial court commented that in addition to being an admission, it bore on Mr. Ibarra-Raya's credibility.

¶46 The City also points out in support of the trial court's formal finding "that claimant is neither the lawful owner of the money seized at 1035 St. John St. on July 14, 2006 nor entitled to its possession" (CP at 1587 (Finding of Fact 1.10)) that it offered evidence that the St. John Street home was not rented under Mr. Ibarra-Raya's name, someone else made all the rent payments, other individuals had keys and access to the home, Mr. Ibarra-Raya was seldom at the home, and ultimately, someone other than Mr. Ibarra-Raya cleaned out the home's contents and kept them. Br. of Resp't at 41-43.

¶47 Finally, Mr. Ibarra-Raya did not testify. As observed in *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir. 1992), "[s]ilence has consequences" in proceedings for the return of evidence, "because silence is no evidence."

¶48 The starting point for evaluating the City's claim that it was entitled to retain the cash under CrR 2.3(e) was a presumption that Mr. Ibarra-Raya was its owner. Once the City made a substantial showing that the property did not belong to Mr. Ibarra-Raya, the burden shifted to him. Viewing the evidence in the light most favorable to the City

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

and deferring to the trial court's assessment of credibility, the untainted evidence supports the trial court's findings.

¶49  Affirmed.

SWEENEY and BROWN, JJ., concur.